WELLS, Respondent, vs. CHASE, Appellant.

*October 26—November 14, 1905.*

*Evidence: Transaction with person since deceased: Objection how made: Testimony on former trial: Wills: Domicile of testatrix: Will made in case of death on journey.*

1. An objection to the competency of evidence of transactions with a person since deceased is not sufficient to exclude such evidence on the ground of the incompetency of the witness under sec. 4069, Stats. 1898.
2. Where a copy of the reporter's minutes of evidence given on a former trial was not certified to by him as required by sec. 4141, Stats. 1898, nor proof made of the facts required to be so certified, it was not admissible although the reporter testified that it was a correct copy made by himself of the minutes of the court as taken by him on the former trial.
3. Evidence to the effect that a testatrix, prior to 1881, lived for eighteen years at Neenah; that thereafter until 1902 she lived with a son at Appleton; that in April, 1902, she left Appleton, intending again to establish her residence in Neenah, and actually remained there about two months looking for a suitable

home; that while there she said Neenah was her home, her heart turned to Neenah, there her dead were buried, and there· she preferred to live the remainder of her life and be laid at· rest; that thereafter she lived a short time with a brother in· Fond du Lac, and afterwards in 1903 took a trip to California,. always asserting that Neenah was her residence and the place· to which she expected to return; that in the fall of 1902 she· stated that she lived in Neenah and signed and swore to a petition describing her residence as Neenah; that in her will and other documents she referred to Neenah as her place of residence; that she had a burial lot and in 1903 joined a church in Neenah, stating that she wished to have her membership where she felt at home—is *held* to sustain a finding of the trial court· that at the time of her death at Fond du Lac in 1904 she was a resident of Neenah.

4. The testatrix, having died at Fond du Lac before arriving at· Neenah on her return from California, died on her journey, within the meaning of a recital in the will that it was "made· in case I die on my journey home from California." *It seems·* that, even had she died after arriving home, such recital or provision would not defeat her will.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Affirmed.*

An instrument purporting to be the last will and testament of Lucy A. Smith, deceased, was admitted to probate in the county court of Winnebago county, and upon appeal to the circuit court the decision was affirmed. The objections to the admission of the will to probate are, in effect, that Lucy A. Smith, at the time of her· death, was a resident of Fond du Lac county, and died in the city of. Fond du Lac May 25, 1904; that the will was conditioned and contingent upon the· death of said Lucy A. Smith on her journey from California; and that she did not die on such journey. The will is holograph, and was executed at Los Angeles, California, April 18,. 1904. *Marcia Wells,* a sister, was given $500 and the life insurance, out of which she was directed to pay the funeral expenses. Molly Freeman and Alice Evans, sisters of deceased, were each given $100, and the household goods divided among· relatives. Request was also made for a monument not to ex-

ceed in cost $200. *Mildred Chase* was named as residuary legatee. The will recited: "This will is made in case I die on my journey home from California." Mayhew Mott, of Neenah, Wisconsin, is named as executor.

The circuit court found the following facts:

"(5) That prior to the year 1881 the said Lucy A. Smith resided at the city of Neenah in her own homestead, which she retained, resided in, and rented until some time in September, A. D. 1902; that from the year 1881 to about the 1st day of April, 1902, the said Lucy A. Smith resided at the city of Appleton with her son, Leonard Smith. (6) That on or about the last day of April, 1902, she abandoned her residence at Appleton aforesaid, and, sending some of her household furniture to her brother, Samuel Wells, at the city of Fond du Lac, Wisconsin, went to and remained at the city of Neenah until about the 1st day of June, 1902, inquiring for rooms, and with the intention to make her permanent domicile at said city of Neenah as soon as a suitable home for her could be secured. (7) That, failing for the time to find such home at Neenah, Wisconsin, she, on or about the 1st day of June, 1902, occupied a room in the house of her said brother, Samuel Wells; but such was temporary and without intention to make her legal domicile at the said city of Fond du Lac. (8) That at no time did she occupy a room or reside at Fond du Lac with intention to make her permanent home there. (9) That nearly half of the time after leaving the city of Appleton and before going to California, in the year 1903, was spent by her in said city of Neenah, residing with her relatives and inquiring for a suitable place of permanent residence. (10) That her husband, her son, and other of her relatives, with herself, are buried at the city of Neenah in the family burial lot. (11) That she became a member of the Union Baptist Church of said city of Neenah and so remained until her death. (12) That all of her statements, oral and in writing, show an intention on her part to make her home at Neenah, Wisconsin, and not at Fond du Lac, Wisconsin."

The appellant assigns as error the admission of improper evidence, admission of the testimony of Mary Wells and May Freeman taken on former trial, the finding to the effect that

the legal residence and domicile of deceased at the time of
her death was Neenah, and in affirming the judgment of the
county court and admitting the will to probate.

For the appellant there was a brief by *Alden, Latham &
Young,* attorneys, and *Phillips & Hicks,* of counsel, and oral
argument by *E. R. Hicks.* They contended, *inter alia,* that,.
in determining whether Mrs. Smith changed her residence to
Neenah, the test is to inquire whether she did in fact remove
her home to the latter place. Mere intention, without actual
removal of location, is wholly insufficient. *Frame v. Thor-
mann,* 102 Wis. 653; *Kempster v. Milwaukee,* 97 Wis. 343,.
347; *Carter v. Sommermeyer,* 27 Wis. 665; *Hall v. Hall,* 25·
Wis. 600, 607. ·When a person's acts and declarations con-·
flict, less weight should be given to his declarations than to
his acts. 10 Am. & Eng. Ency. of Law (2d ed.) 28. And·
conflicting declarations are of little importance. . Id.; *Smith
v. Croom,* 7 Fla. 81.

*Wesley Mott,* for the respondent, argued, among other·
things, that by no reasonable construction can this will under·
discussion be construed as one which would become inopera-·
tive by any condition as to time or place of the death of the
testatrix. The tendency of the later and better considered·
cases is to construe the language, if possible, as merely set-
ting forth the circumstances which induced the testator to·
'make a testamentary provision, rather than as creating a con-
dition upon which alone it is to become operative. 29 Am.
& Eng. Ency. of Law (1st ed.) 132; *Strauss v. Schmidt,* 3.
Phillim. 209; *Ex parte Lindsay,* 2 Bradf. 204; *French v..
French,* 14 W. Va. 458; *Kelleher v. Kernan,* 60 Md. 440.
Wills containing the following expressions have been declared·
valid, and have been upheld even though testator lived until
after the event mentioned: "Being about to take a long jour-
ney, and knowing the uncertainty of life." *Tarver v. Tarver,*
9 Pet. 174; *Damon v. Damon,* 8 Allen, 192. "To provide for·
possible contingencies." *Kelleher v. Kernan,* 60 Md. 440,.

445, 446. "According to my present intention, should anything happen to me before I reach my friends in St. Louis." *Ex parte Lindsay,* 2 Bradf. 204; *Thompson v. Connor,* 3 Bradf. 366. "In case of my death on the way." *In re Mayd,* L. R. 6 Prob. Div. 17. "In the event of my death while serving in this horrid climate." *In re Thorne,* 4 Sw. & T. 36, 11 Jur. N. s. 569. "Being physically weak in health, have obtained permission to cease from all duty for a few days . . . and in the event of my death occurring during such time I hereby will and bequeath." *In re Martin,* L. R. 1 Prob. & Div. 380. "In case of any fatal accident happening to me, being about to travel by railway." *In re Dobson,* L. R. 1 Prob. & Div. 88; *In re Marlin, supra.* In *French v. French,* 14 W. Va. 458, where the expression was, "Let all men know hereby, if I get drowned this morning, March 7, 1872, that I bequeath," etc., and testator lived and afterwards died under different circumstances, it was held to be a valid will at the time of his death.

KERWIN, J. 1. Objection was made to the testimony of *Marcia Wells,* proponent, and May Freeman, as to declarations of the testatrix, and their testimony admitted over such objection; and this, it is claimed, was error, on the ground that the witnesses were interested and therefore their testimony not admissible, under sec. 4069, Stats. 1898. But the objection was to the competency of the evidence, and not to the competency of the witnesses to testify. The objection, therefore, was not sufficient to exclude the evidence. *McCormick v. Herndon,* 67 Wis. 648, 31 N. W. 303.

The most important assignment of error concerning the admission of evidence is that respecting the admission of the reporter's notes of the testimony of Mary Wells and May Freeman, taken upon the former trial. Counsel for respondent argues at length the question of whether the testimony of

these witnesses produced upon the former trial was competent, they being nonresidents of the state at the time of the last trial; but it becomes entirely unnecessary to consider this question, since counsel failed to offer proper proof of the testimony taken on the former trial. He produced the reporter and proved by him that he took the testimony on the first trial. He testified: "This is a correct copy, made by myself, of my notes of the testimony of Mary Wells, compared by myself." Proponent then offered in evidence "the original copy of the minutes of the reporter, pages 11, 12, 13, and 14, which includes the testimony of Mary Wells." This was objected to as incompetent, irrelevant, and immaterial, and the court reserved its ruling, to which the contestant excepted. Respecting the testimony of May Freeman, the official stenographer was called and testified: "That copy, made by myself, is a correct copy of the minutes of the court as taken by me on the former trial." The testimony of May Freeman was, upon this proof, offered in evidence and admitted under the contestant's objection that the same was incompetent, irrelevant, and immaterial. It is clear that this evidence was not admissible upon the proof made. Sec. 4141, Stats. 1898, provides that the minutes of evidence and proceedings, or of any specific part thereof, on the trial of an action or proceeding, taken by the official phonographic reporter of the court, being certified by such reporter to be a true and correct transcription in longhand of all the testimony on the trial, or of a particular witness, carefully compared by him with his original notes, and to be a correct statement of the evidence and proceedings had on such trial so purporting to be taken and transcribed, shall be received in evidence with the same effect as if such reporter were present and testified to the facts so certified. It does not appear that this statute was complied with. The evidence offered was not certified to by such reporter, as required by this statute, nor was proof made of

the facts required to be so certified. It follows, therefore, that the testimony of Mary Wells and May Freeman, taken on the first trial, was improperly admitted.

2. The controlling question upon this appeal, and the one principally discussed by counsel on both sides, is the question of residence of the testatrix. The court below found that she was, at the time of her death, a resident of the city of Neenah, and after a careful examination of the testimony we are satisfied that there is ample competent testimony in the case to support the findings. Aside from the testimony of Mary Wells and May Freeman, improperly admitted, there is competent, credible testimony to the effect that prior to 1881 the testatrix had lived for upwards of eighteen years at Neenah, and, when she left Appleton, she intended to establish her residence at Neenah, and actually located there and remained about two months, during which time she sought a permanent place of residence, thereafter living with her brother at Fond du Lac a short time, and then taking a trip to California, always asserting that Neenah was her residence and the place to which she expected to return. In her will and other written documents she referred to Neenah as her place of residence. She also had her burial lot there, and was a member of the church at Neenah. Shortly after leaving Appleton, and while at Neenah, she said Neenah was her home, her heart turned to Neenah, there her dead were buried, and there she preferred to live the remainder of her life, and be laid at rest by the side of her loved ones. After leaving Appleton and in October, 1903, she joined the church at Neenah, and gave as her reason for so doing that she felt at home there and wanted to have her membership where she felt at home. In the fall of 1902 she stated that she lived at Neenah, and signed and swore to a petition describing her residence as Neenah. The facts found by the court below on the question of residence clearly establish that the testatrix's residence was at Neenah. It cannot be said that these findings are so clearly

against the preponderance of the evidence as to warrant this court in disturbing them.

3. On the question whether the will was contingent upon the death of said Lucy A. Smith on her journey from California, little need be said. This point was not pressed by counsel, either in their brief or upon oral argument, and we assume it has been abandoned. It is not necessary to consider the effect of this provision, because the testatrix's home being Neenah, and having died at Fond du Lac before arriving at Neenah, she died on her journey, within the contemplation of this provision of the will. However, had she died after arriving home, there is abundance of authority to the effect that such provision would not defeat the will.

Other errors assigned we do not deem of sufficient importance to merit special consideration, and, there being sufficient competent evidence to support the findings of the court below, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.